Reversed and Remanded and Opinion filed June 12, 2007








Reversed
and Remanded and Opinion filed June 12, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00797-CR

____________

 

KENNETH WAYNE SIMPSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 176th
Judicial District Court

Harris County, Texas

Trial Court Cause No.
1024134

 



 

O P I N I O N








Appellant, Kenneth Wayne Simpson, appeals from his felony
conviction for aggravated assault.  After finding appellant guilty, as charged,
the jury found the two enhancement allegations to be true and assessed his
punishment at confinement in the Institutional Division of the Texas Department
of Corrections for 35 years.  In five points of error, appellant contends (1)
his recorded statement was made involuntarily in violation of the Texas Rules
of Criminal Procedure, Article 38.22;[1]
(2) the evidence is legally insufficient to support the verdict; (3) the
evidence is factually insufficient to support a verdict of guilty; (4) the
State failed to prove striking a person with the butt of a gun is use of a
deadly weapon intended to cause serious bodily injury; and (5) the trial court
erred in denying his request for a jury instruction on defense of property. 
Because we will sustain appellant=s first point of
error and overrule his second point of error, we reverse and remand for further
proceedings.

Officer Anderson
of the Houston Police Department conducted a custodial interrogation of
appellant concerning a possible robbery at an illegal gambling club.  A video
recording was made of the interview.  Anderson read appellant his Miranda
rights.[2] 
Anderson began questioning appellant.  The pertinent part of the transcript is
as follows:

[Anderson]:  I B I don=t know.  You=re not telling me anything and I=m telling you what I=m reading.  Then tell me your side
of it, tell me what happened, why B what happened?

[Appellant]:   It=s B it=s a bunch of witnesses there so, you know, it=ll B it will tell, it will.

[Anderson]:  But
you don=t want to tell me
your side?

[Appellant]:   No, I don=t even want to talk about it
because it=ll B it=ll really tell.

[Anderson]:  Okay.

[Appellant]:   Yeah.

However,
Anderson continued to question appellant, and appellant admitted assaulting
Anthony Galentine, but did not admit to robbing him.  Appellant=s motion to
suppress was denied in a pretrial hearing.








When a defendant makes a pretrial challenge to the
voluntariness and admissibility of his confession, the prosecution bears the
burden of proving voluntariness by a preponderance of the evidence.  Lego v.
Twomey, 404 U.S. 477, 486 (1972); Alvarado v. State, 912 S.W.2d 199,
211 (Tex. Crim. App. 1995).  The court, outside the presence of the jury, must
conduct a hearing to determine for itself whether the statement was voluntarily
given.  Tex. Code Crim. Proc. Ann.
art. 38.22 ' 6; see also Jackson v. Denno, 378 U.S.
368 (1964) (establishing the procedure for the voluntariness hearing). 
Voluntariness is determined by considering the totality of the circumstances.  Creager
v. State, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997).  We do not disturb
the court=s ruling unless there is a clear abuse of discretion. 
Alvarado, 912 S.W.2d at 211.

The right to terminate questioning is a critical safeguard
of the Fifth Amendment right to remain silent.  Watson v. State, 762
S.W.2d 591, 596 (Tex. Crim. App. 1988).  Police must cease interrogating a
suspect once the suspect indicates in any manner, at any time during
questioning, that he wishes to remain silent.  Id. (citing Miranda,
384 U.S. at 444B45).  Whether a suspect has asserted his
right to terminate questioning is also decided on the totality of the
circumstances in each particular case.  Id. at 597.  In response to
Anderson=s question asking
appellant if he wanted to tell his side, appellant answered ANo, I don=t even want to
talk about it . . .@  ANo@ is an unambiguous
answerCthe custodial
interrogation should have ceased immediately.  Thus, the trial court erred in
admitting into evidence the videotape from the point appellant invoked his
right to terminate questioning until the end of the tape.

Because we find the trial court committed a constitutional
error in admitting the videotape, we must determine whether such error was
harmful to appellant.  Long v. State, 203 S.W.3d 352, 353 (Tex. Crim.
App. 2006).  If the appellate record in a criminal case reveals constitutional
error in the proceedings below, the appellate court must reverse the judgment
under review unless the appellate court determines beyond a reasonable doubt
that the error made no contribution to the conviction or to the punishment.  Id.
(citing Tex. R. App. P. 44.2(a)).  In calculating the probable
impact of the error on the jury, we look at the totality of the circumstances
and the record as a whole.  Miles v. State, 204 S.W.3d 822, 828 (Tex.
Crim. App. 2006).  The State=s main evidence consisted of the
confession, testimony by Galentine and the arresting officer, and a gun and gun
clip collected during the chase. 








The prosecutor=s first sentence
in his opening statement was AThe first and most important thing that
the twelve of you need to know about this case is that it=s a confession
case.@  The State=s attorney talked
further about the confession, other evidence, and then finished with an
additional reference to the confession.  During its case in chief, the State
called Anderson and played the entire videotape.  The only eyewitness called by
the State was Galentine.  Part of the complainant=s testimony was
disputed by the State=s final witness, the officer who arrested
appellant.  The defense called no witnesses.

Anderson testified she could not recall appellant saying he
did not want to talk.  She stated she listened for it during the trial
presentation, and could not Acatch@ it.  Anderson
testified that in her opinion appellant did not attempt to terminate the
interview.

Galentine testified appellant pulled a gun on him, took all
the money he had, and then hit him on the head with the gun, drawing blood and
causing the gun to discharge into the air.  Galentine explained he left the
club, started driving home, and then decided to call the police from his cell
phone.  He arranged to meet Officer Running at a corner near the club. 
Galentine also testified when Running drove up to appellant=s house, appellant
was standing next to a man, talking Aabout the
incident, I assume.@  Galentine said appellant ran away when
Running exited the car.

Part of Officer Running=s testimony
differed from Galentine=s.  Running stated that the call to 911
did not come from a cell phone, it came from a pay phone across the street from
the corner where he met Galentine.  Running also testified Galentine did not
lock a car or secure anything when they went to look for appellant.  Running
added he was not aware that Galentine had a car at the scene and when he
dropped him back at the corner, he did not observe Galentine get into a car. 
Running further testified that when he drove up to appellant=s house, appellant
was standing on his driveway and another man was standing approximately thirty
feet away. 








When Galentine identified appellant, Running exited the car
and told appellant to place his hands on his head.  Instead, appellant ran off
and Running chased after him, while Galentine stayed by the car.  Running lost
appellant in the neighborhood.  Running testified he recovered a gun with an
empty shell casing inside, in a neighbor=s backyard, while
he was backtracking Aon the same path@ that he had
chased appellant.  The empty shell casing showed the gun had been fired at some
point.  However, Running did not see appellant discard anything during the
chase.  Running also recovered a fully loaded gun clip, whose bullets matched
the caliber in the gun, from appellant=s front porch. 
Running acknowledged he did not know who placed the gun in the neighbor=s yard or the clip
on the porch, and both areas were unobserved during the chase.  

No tests for fingerprints were run on the gun, shell
casing, or clip.  No bullet was recovered from the club and, therefore, no
ballistics were run.  No pictures were taken of the inside of the club, and no
witnesses were interviewed.  Galentine refused medical attention, and no
pictures were taken of any injuries.  There was no blood found at the scene, or
on the butt of the gun.  In fact, no physical evidence linked this particular
gun to the alleged incident.

The State=s attorney began
his closing statement with: AThe decision to find this defendant guilty
of aggravated assault should be the easiest decision you make all week.  And
the reason is because you have a video confession where he=s telling the
detective, if anything it was aggravated assault.  Now that I did do.@  The State
continued referencing the confession throughout its closing argument, at one
point stating: ASo I don=t want you to get
bogged down in any evidence relating to this gambling and whose money it
belonged to and who had a greater right to possession of the money, because
really and truly, that doesn=t matter at all . . . [because] he
admitted it.@  At one point the State referred to Galentine=s testimony, and
then returned to the proof afforded by the confession.  Out of a ten-paragraph
closing argument, nine paragraphs involved the confession.  After the defense=s closing
argument, the prosecutor=s rebuttal again focused on the
confession: 

This confession is like an elephant sitting in the
courtroom.  The sheer weight of it alone, it should take you-all 15 minutes to
return a verdict of guilty just based on that alone.








What are you going to do when your client has so
completely confessed on videotape, what are you going to do?  Well, you=re going to say, well, the
investigation went bad.  Well, there are no fingerprints.  To that I say so
what, he confessed.  There were no ballistics.  As the officer said, there was
no spent round found to compare to the weapon.  So what?  He confessed.

He says you didn=t find any medical
records or whatnot.  So what? He confessed . . .

The State repeatedly emphasized the video, downplaying
other evidence or the lack of evidence as unimportant in light of the
confession.  Part of Galentine=s testimony was contradicted by Running=s testimony. 
There was no physical evidence collected at the scene of the incident, and no
physical evidence collected from the gun, appellant, or Galentine.  Under these
facts, we cannot conclude beyond a reasonable doubt that the admission of
appellant=s confession did not contribute to his conviction and,
thus, we sustain appellant=s first point of error.  Tex. R. App. P 44.2(a). 

In his second point of error, appellant challenges the
legal sufficiency of the evidence.  A legal sufficiency challenge calls for
appellate review of the relevant evidence in the light most favorable to the
prosecution.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen
v. State, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003).  We consider all the
evidence that sustains the conviction, whether properly or improperly admitted
or whether introduced by the prosecution or the defense, in determining the
legal sufficiency of the evidence.  Conner v. State, 67 S.W.3d 192, 197
(Tex. Crim. App. 2001).  The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given testimony, and it is also the exclusive
province of the jury to reconcile conflicts in the evidence.  Wesbrook v.
State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, we must affirm.  McDuff
v. State, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).








Appellant complains the evidence was legally insufficient
to support his conviction for aggravated assault because the State failed to
prove all the elements of aggravated assault; the State failed to demonstrate
the manner in which the weapon was used meets the legal definition of a deadly
weapon; and the State failed to negate appellant=s defense of
property claim.[3] 
Galentine testified that he and appellant had words over the rules of a dice
game, and money.  Galentine stated appellant pulled a semi-automatic handgun
and pointed it at his chest and head.  Galentine said he told appellant to put
down the gun, but appellant said Ano, I ought to
shoot you.@  Galentine further testified he felt Alike I was fixing
to die at that moment.@ Galentine explained appellant struck him
on the head with the butt of the gun, causing the gun to Asplit my head to
where blood was coming out of it.@  Galentine also
stated the gun fired when appellant hit him with it.  

A firearm is, per se, a deadly weapon.[4] 
The indictment charged that appellant threatened Galentine with Aimminent bodily
injury by using and exhibiting a deadly weapon, namely, a firearm,@ and caused
Galentine bodily injury by Ausing a deadly weapon, namely, a firearm.@  Galentine
testified appellant aimed the gun at him, threatened to shoot him, hit him with
the gun, and the gun discharged.  The fact that Galentine=s injury was
caused by the butt of the gun instead of a bullet is of no consequence.








Appellant did not testify.  However, appellant=s video confession
was before the trial court.  In the video, appellant admitted pulling a
semi-automatic gun on Galentine that appellant had purchased Aoff the street.@  Appellant
acknowledged punching Galentine, but denied using his fist or the gun. 
Additionally, the video showed appellant claiming ownership of the money in
dispute.  Galentine testified appellant drew a gun and took the money from the
dice game, as well as money Galentine had in his pocket.  The jury is the sole
arbiter when assessing the credibility of the witnesses, weighing the evidence,
and resolving any conflicts.  We presume the jury did not accept appellant=s explanations. 
Viewing all the relevant evidence in the light most favorable to the
prosecution, we determine the jury could rationally find, beyond a reasonable
doubt, each element of aggravated assault and, thus, the evidence is legally
sufficient to support the verdict.  Accordingly, we overrule appellant=s second point of
error.

Because we sustain appellant=s first point of
error and overrule appellant=s second point of error, we do not reach
appellant=s remaining points of error.  Having found appellant=s confession was
involuntary and its admission as evidence contributed to appellant=s conviction, we
reverse the judgment of the trial court and remand the cause for further
proceedings consistent with this opinion.

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

Judgment rendered
and Opinion filed June 12, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.

Publish C Tex. R. App. P. 47.2(b).









[1]  Tex. Code
Crim. Proc. Ann. art. 38.22 (Vernon 2005).





[2]  Miranda v. Arizona, 384 U.S. 436 (1966). 





[3]  The indictment alleged appellant Adid then and there unlawfully, intentionally and
knowingly threaten Anthony Galentine with imminent bodily injury by using and
exhibiting a deadly weapon, namely, a firearm@ and Adid then and there unlawfully, intentionally and
knowingly cause bodily injury to Anthony Galentine by using a deadly weapon,
namely, a firearm.@  See Tex.
Penal Code Ann. '' 22.01, 22.02 (Vernon Supp. 2006).





[4]  The statute, in the pertinent part, reads:

(17) ADeadly weapon@
means:

(A) a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury; . . .

Tex. Penal Code Ann. ' 1.07(a)(17)(A)
(Vernon Supp. 2006).